IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 740-339-2592 (AT&T), With IMSI Number 310410359112079 | Case No. 2:22-mj-124<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, E. Travis Aaron, Special Agent (SA) with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the Resident Agency in Portsmouth, Ohio. I have been so employed since 2018. Prior to joining the FBI, I worked as a law enforcement officer in varying capacities. I began my law enforcement career in 2012 as a patrol officer in Coulterville, Illinois, where I spent three years working on all case work assigned to my jurisdiction. I transferred to the Red Bud, Illinois Police Department in 2015 where I continued as a patrol officer for the city. I helped create an educational program for narcotics that was presented to the local school district along with certification as an Active Shooter Instructor by 4E. I transferred to Southern Illinois University-Edwardsville (SIUE) in 2016 as a patrol officer. I was promoted to a Field Training Officer for the department prior to leaving to accept a position as Special Agent for the FBI in 2018.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and have the authority to execute warrants issued under the authority of the United States. As part of my daily duties as an FBI agent, I investigate criminal violations relating to child exploitation and child pornography, including the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252 and 2252A, as well as drug-related offenses, including violations of 21 U.S.C. §§ 841 and 846.

3. As a Special Agent, I am authorized to investigate violations of the laws of the

United States and to execute warrants issued under the authority of the United States.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PURPOSE OF THE AFFIDAVIT

5. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 740-339-2592, International Mobile Subscriber Identity/Electronic Serial Number (IMSI) 310410359112079 with listed subscriber Unknown Person (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

6. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1). A certification by AUSA Nicole Pakiz, an attorney for the government, that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the FBI is included on the signature page of this affidavit.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that the offenses of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 and Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), have been committed, are being committed, and will be committed by Michael Valentine and Unknown Persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to

2

the identification of individuals who are engaged in the commission of these offenses.

8. Title 21, United States Code, Section 846, makes it a federal crime for any person to attempt or conspire to commit any offense defined within the subsection, which in the case of this investigation is Title 21, United States Code, Section 841(a)(1), making it a federal crime for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

10. In approximately January of 2022, your affiant and assisting the Metro Drug Unit in Charleston, WV personnel, made controlled video recorded purchases of a white powdery substance, sold as fentanyl, from Michael Valentine, using a government source.

11. On or about January 25, 2022, the Charleston Metro Drug Unit made a video recorded, controlled, purchase of a white powdery substance sold as fentanyl from Michael Valentine. Prior to the purchase of suspected fentanyl from Valentine, the government source was issued a covert recording device and US Currency, which had been previously recorded by task force personnel. The government source and his/her vehicle was searched for contraband, which yielded negative results. The government source contacted Michael Valentine via telephone, advising of his/her timed arrangement for a narcotic purchase. At a rural location in Vinton, Ohio (Gallia County) near 43 Scenic Drive, the government source provided Michael Valentine with $2400 cash for a previous exchange of suspected fentanyl. Michael Valentine arranged to "front" the government source with an additional ounce of fentanyl for a repayment of $2400. The government source returned to meet with law enforcement and provided one ounce of suspected fentanyl and the recording device that had been previously issued to the government source by law enforcement. The government source advised; he/she was to repay $2400 in exchange for the one ounce of fentanyl he/she received during the meet with Michael Valentine. The aforementioned video recorded, controlled purchase of suspected fentanyl from

3

Michael Valentine, was arranged by the government source calling Michael Valentine at 740-339-2592, the Target Cell Phone.

12. Law enforcement discovered the suspected fentanyl weighed approximately 29.5 grams in its original packaging and also yielded a positive indication for the presence of fentanyl when field tested.

13. On or about February 7, 2022, your affiant and assisting with the Charleston Metro Drug Unit personnel, made a video recorded, controlled, purchase of a white powdery substance sold as fentanyl from Michael Valentine. Prior to the purchase of suspected fentanyl from Michael Valentine, the government source was issued a covert recording device and US Currency, which had been previously recorded by law enforcement. The government source and his/her vehicle was searched for contraband, which yielded negative results. The government source contacted Michael Valentine via telephone, advising of his/her timed arrangement for a narcotic purchase. At a rural location in Vinton, Ohio (Gallia County) near 43 Scenic Drive, the government source provided Michael Valentine with $2400 cash for a previous mentioned exchange of suspected fentanyl from January 25, 2022. Michael Valentine arranged to "front" the government source with an additional two ounces of fentanyl for a repayment of $4800. The government source returned to meet with law enforcement and provided two ounces of suspected fentanyl and the recording device that had been previously issued to the government source by law enforcement. The government source advised; he/she was to repay $4800 in exchange for the two ounces of fentanyl he/she received during the meet with Michael Valentine. The aforementioned video recorded, controlled purchase of suspected fentanyl from Michael Valentine, was arranged by the government source calling Michael Valentine at 740-339-2592, the Target Cell Phone.

14. Law enforcement discovered the suspected fentanyl weighed approximately 56.68 grams in its original packaging and also yielded a positive indication for the presence of fentanyl when field tested.

15. Your affiant submits that the Target Cell Phone was used to facilitate communication with a government source while Michael Valentine arranged for the exchange of suspected fentanyl. At this time, law enforcement does not know where Valentine stores his drugs, the identities of all Valentine's customers, or who is supplying his drugs. The collection of

4

location information for the Target Cell Phone for the next 30 days, will assist in corroborating in real time, Michael Valentine's known date and direction of travel in the acquisition and distribution of future narcotics.

16. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

17. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain

5

cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*SA E. T3*

E. Travis Aaron
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January 22, 2022

Elizabeth Preston Deavers
United States Magistrate Judge
United States District Court, Southern District of Ohio

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order. I, an attorney for the Government, certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the FBI. *See* 18 U.S.C. §§ 3122(b), 3123(b).

s/ Nicole Pakiz
NICOLE PAKIZ
Assistant United States Attorney
Southern District of Ohio

7

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (740)-339-2592 (AT&T), with International Mobile Subscriber Identity 310410359112079, with listed subscriber, Unknown Subscriber (the "Target Cell Phone"), whose wireless service provider is AT&T ("the Provider"), headquartered at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408 .
2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T: including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## **ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.    Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substances; 21 U.S.C. § 841(a) (1) Distribution of Controlled Substances involving Michael Valentine and other unidentified subjects.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.